Melvin M. **TUCKER**

v.

**READING COMPANY**

v.

**ROYCE KERSHAW COMPANY, Inc.**

Civ. A. No. 69–1603.

United States District Court,
E. D. Pennsylvania.

Nov. 19, 1971.

Milford J. Meyer, Philadelphia, Pa., for Melvin M. Tucker.

George Lieberman, William J. Taylor and Morgan, Lewis & Bockius, Philadelphia, Pa., for Reading Co.

F. Hastings Griffin, John F. Wilson, III, Philadelphia, Pa., for Royce Kershaw Co. Inc.; Dechert, Price & Rhoads, Philadelphia, Pa., on the brief.

## MEMORANDUM AND ORDER

JOHN W. LORD, Jr., Chief Judge.

A brief procedural history of this case is in order, if only to preclude any further motions being made by either party to the present stage of the proceedings (Reading Company and third-party defendant Royce Kershaw) to reopen, reargue, resubmit, or reconsider any preliminary steps to the trial which we believe necessary in this matter, the reasons for which are set forth more fully in our Order.

As recited in our Opinion of September 10, 1971, 53 F.R.D. 453, plaintiff Melvin M. Tucker was injured in the course of his employment with defendant Reading Company, and brought suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51. Reading sought to obtain indemnity under the contract from Royce Kershaw, manufacturer of the equipment involved, as well as contribution for concurrent negligence. The F.E.L.A. action was settled for $235,000.00. Royce Kershaw argued, and this Court agreed, that it had not received sufficient notice under the contract to hold it liable for indemnity. We, therefore, entered summary judgment in favor of Royce Kershaw and against Reading for both claims, on June 28, 1971. On July 8, 1971, Reading filed motions pursuant to Rule 59, Fed.R.Civ.P., to vacate and amend judgment, with Royce Kershaw. The motions were filed with the Clerk of the Court on July 13, 1971, and on July 26th, 1971. Reading filed its notice of appeal.

A subsequent argument was held before us to determine if the appeal divested this Court of jurisdiction to consider the Rule 59 motions, or whether the filing of timely motions to vacate and amend rendered our summary judgment interlocutory, and, consequently, the appeal invalid. The Order of September 10, 1971, declared the appeal invalid, and we ordered a further hearing on the motions of Reading Company to amend and vacate. Briefs were filed and argument heard on those motions. We set forth below our reasons for denying the motion to vacate, and granting the motion to amend.

### I

Reading failed to notify Royce Kershaw of the suit until approximately seventeen months had passed. It is Reading's position that because Royce Kershaw received notice of the *accident* almost immediately after its occurrence, this was sufficient notice.

■ This is incorrect. Paragraph 15 of the Lease Agreement between Reading and Royce Kershaw is explicit in demanding that

> In the event any suit, or action shall be commenced or any claim shall be asserted against the Railroad for or on account of any loss, damage or injury for which Kershaw is liable hereunder, the Railroad shall give Kershaw reasonable notice thereof
>
> . . .

It is clear from a reading of the contract that Royce Kershaw contracted to receive from the Railroad reasonable notice of any *suit* against them, not reasonable notice of an *accident* which might be the cause of such suit.

■ Reading's second argument for vacation of the award, that it failed to give notice for more than seventeen months because it did not know the exact legal strategy which plaintiff intended to employ, seems to us to be without merit. We think that a Railroad would be subject to such a large number of suits brought by workmen that it could anticipate whether or not a third-party defendant would have to be joined, particularly where, as here, the Reading was represented by a distinguished member of the Railroad defense bar. In any event, the contract called for reasonable notice, and seventeen months is to us far too long a delay. The cases construing time requirements for promptness are in accord. *See, e. g.,* United States Casualty Company v. Lib-

erty Mutual Insurance Company, 208 F. Supp. 36 (E.D.Pa.1962); Farmers National Bank of Ephrata v. Employers Liability Assurance Corporation, 414 Pa. 91, 199 A.2d 272 (1964).

Reading has urged upon us that reasonable notice should not be taken arbitrarily from the time periods cited in the case law, but should be decided upon the facts of each case. Citing Farmers National Bank of Ephrata v. Employers Liability Assurance Corporation, *supra.* While this is a reasonable position, we note with interest that none of the cases cited by either party dealt with a time period of nearly a year and a half, and that, determining on the individual facts before us what is reasonable, we would have to conclude that seventeen months is not. Finally, Reading cites Meierdierck v. Miller, 394 Pa. 484, 147 A.2d 406 (1959) for the proposition that reasonable notice is a question for the jury which it says we should empanel in this matter. Although the *Meierdierck* court mentioned jury consideration of such an issue where there were extenuating circumstances, it held that, "[w]here special circumstances do not appear, the question whether the insured has complied with the requirements of the policy in giving notice of an accident is one for the court." *Id.* at 488, 147 A.2d at 408. Aside from Reading's claim of non-knowledge of what Tucker's counsel's trial tactics would be, we find no special circumstances present in the case, and consider this to be a question for our sound discretion. Accordingly, we will deny the motion to vacate judgment.

## II

■ The second form of relief requested by Reading is an amendment and modification of our Order of June 28, 1971, to permit it to seek common law contribution against Royce Kershaw.

The third-party defendant argues that where Reading has lost its contractual rights to indemnity, it also loses its common law rights to contribution. We disagree. In Builders Supply Company v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951), the court construed Ohio law, but said that, with regard to contribution, "[h]ad the accident occurred in Pennsylvania such a right of recovery undoubtedly would exist." *Id.* at 335, 77 A.2d at 375.[1]

Royce Kershaw relies upon, as it must, Foster v. Pennsylvania R. Co., 201 F.2d 727 (3rd Cir. 1953), where the court, in a footnote, agreed with a district court *conclusion,* itself contained in a footnote,[2] that the parties, "having entered into a contract on the matter, [are to have their rights] determined thereby. . . ." *Id.* at n. 6, 731. The court in *Foster,* however, was relying on Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902 (9th Cir. 1950). There the court said

> Among the circumstances surrounding the execution of the contract was the state of the common law, and the definition of the common law obligations under which the parties would have been required to function had no such contract been executed. . . .

> The common law rules relating to indemnity and contribution as between parties who have been guilty of breaches of duty under circumstances resembling those here involved are expounded in a great number of decided cases, . . .[3]

*Id.* at 907.

The court then reviewed the types of cases in which contribution would be allowed, and those where it would be denied. It rejected specifically a finding that one could contract away a common law right under circumstances similar to those presently before us.

---

1. See, also Anstine v. Pennsylvania R. Co., 352 Pa. 547, 43 A.2d 109 (1945); Trerotola v. Philadelphia, 346 Pa. 222, 29 A.2d 788 (1943); and Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231 (1928).

2. 104 F.Supp. 491, 492, n. 1 (E.D.Pa. 1952).

3. See, e. g., the cases collected at n. 1, supra, for Pennsylvania commentaries on such rules of construction.

The courts in this circuit have shown a similar unwillingness to permit a party to contract away common law rights absent an express intention to do so. In Kennedy v. Pennsylvania Railroad Company, 282 F.2d 705 (3rd Cir. 1960), the court, in a situation similar to the one before us, held

> [I]f Steel's [indemnitor] obligation to maintain the crossing is based on an express agreement, bare knowledge of a dangerous condition will not preclude Railroad from obtaining indemnity. But if Railroad not only knew of the condition but acquiesced in its continuance Railroad's failure to make the crossing safe was reckless. Restatement, Restitution § 95. In this situation, Railroad's negligence is concurrent and it would be entitled only to contribution. 12 P.S. § 2082 et seq.

*Id.* at 710.

This Court, in Kelly v. Pennsylvania Railroad Co., 7 F.R.D. 524 (E.D.Pa. 1948), construing a contract not unlike the one before us, held that

> Where the basis of liability for the claim for relief of the third-party complaint is not dependent upon federal law, the substantive law of the place where the operative facts took place governs. . . .
>
> *Therefore, aside from its rights which it may enforce under the contract, the third-party plaintiff would be able, assuming that the third-party defendant will be shown to have been negligent, to obtain contribution from the latter under the Pennsylvania Law.*

*Id.* at 527. (Emphasis supplied) (Footnote and citations omitted.)

While we intimate nothing with regard to the possible merits of Reading's claims against Royce Kershaw, we do recognize its right to seek to prove those claims.