8 F.3d 27
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Safwat A. IDRIS, Plaintiff,
v.
Eddie HANSON, Defendant.
SUNSET AIRPORT SYSTEMS, Cross-claimant-Appellant,
v.
The BRITISH AIRWAYS BOARD, a/k/a British Airways, PLC,
Cross-defendant-Appellee.
 No. 91-55022.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 2, 1993.
Decided Sept. 29, 1993.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 Memorandum*
 
 
 2
 Sunset Airport Systems ("Sunset") challenges the district court's grant of summary judgment to the British Airways Board ("British Airways") on Sunset's cross-claim for contractual and equitable indemnity, comparative contribution, and declaratory relief against British Airways. The dispute stems from British Airways' refusal to honor its alleged contractual obligation to indemnify Sunset for a personal injury claim arising out of its baggage handling operations. Sunset claims the district court erred in deciding as a matter of law that Sunset failed to notify British Airways of its claim for indemnity "without undue delay" as required under the terms of the contract. Sunset also asserts that an indemnitor, like an insurer, cannot refuse to indemnify an indemnitee on the basis of inadequate notice unless it demonstrates that it has been prejudiced. We affirm.
 
 
 3
 * We review the district court's grant of summary judgment de novo. F.D.I.C. v. O'Melveny & Meyers, 969 F.2d 744, 747 (9th Cir.1992). We must determine whether, with the evidence and inferences viewed in the light most favorable to the nonmoving party, there are any genuinely disputed issues of material fact and whether the district court correctly applied the relevant substantive law. Id. Under the Erie doctrine, we must decide issues of Pennsylvania law as the Pennsylvania Supreme Court would decide them. Compagnie des Bauxites de Guinea v. Insurance Co. of North America, 794 F.2d 871, 871 (3d Cir.1986).
 
 II
 
 4
 Sunset contends the meaning of the phrase "undue delay" is ambiguous and presents a question of fact that cannot be resolved on summary judgment. We first note that it was proper for the district court to decide the issue. In Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa.1977), the Pennsylvania Supreme Court noted that "ordinarily ..., in the absence of extenuating circumstances, the question, whether notice was reasonable and therefore timely, has been one for the court." Id. at 195 n. 2. Here, Sunset did not allege that there were any extenuating circumstances for the delay of over nine months between service of the complaint and formal notification of British Airways.
 
 
 5
 We do not agree with Sunset that the phrase "without undue delay" is ambiguous. The Brakeman court construed the phrase "as soon as practicable" to mean "within a reasonable time depending on the facts and circumstances of each case." Id. at 195 (citations omitted). The term "without undue delay" is susceptible of the same definition. Although Sunset asserts that the word "undue" is surplusage unless it is construed to mean that the indemnitor must show prejudice from the delay, we reject the suggestion that the two meanings go hand in hand. Cf. Foman v. Davis, 371 U.S. 178, 182 (1962) (identifying "undue delay" and "undue prejudice" as distinct reasons justifying denial of leave to amend). Inclusion of the word "undue" signals that Sunset could delay giving notice for a reasonable time and still satisfy the condition precedent.
 
 III
 
 6
 Sunset argues that, under Pennsylvania law, express contract provisions requiring notice are not strictly enforced unless the indemnitor demonstrates that it was prejudiced by the defective notice.[1] Sunset accurately states the law in Pennsylvania as it relates to insurers; the question is whether indemnitors also must show prejudice due to lack of notice.
 
 
 7
 In Brakeman, 371 A.2d at 193, the Pennsylvania Supreme Court changed its stance on enforcement of insurance policy conditions requiring that the insured give notice to the insurer. Formerly, insurers seeking to strictly enforce notice provisions in an insurance policy were not required to show prejudice. See, e.g., Meierdierck v. Miller, 147 A.2d 406 (Pa.1959). In Brakeman, the court adopted the "notice-prejudice" rule, which requires insurers seeking to be released from liability on a policy to establish both that notice was inadequate and that they were prejudiced as a result. Brakeman, 371 A.2d at 196.
 
 
 8
 The Brakeman court identified two primary concerns motivating its decision to stray from the "strict contractual approach reflected in [past Pennsylvania] cases." Id. The court recognized that most insurance contracts are adhesion contracts and that most policyholders do not have a realistic opportunity to bargain over notice terms. Id. The court was also concerned that insurers could take advantage of a mere technicality and completely deprive the insured of the benefit of the bargain. It was neither logical nor fair for an insured who had conscientiously paid premiums to forfeit the envisaged recovery when the improper notice did not disadvantage the insurer. Id. at 196-97; id. at 197 ("We are reluctant ... to allow an insurance company to refuse to provide that which it was paid for unless a sound reason exists for doing so.").
 
 
 9
 After consideration of the factors addressed in Brakeman, we decline to expand the application of the notice-prejudice rule to indemnity contracts generally. Under Pennsylvania law, "[c]ontracts of indemnity are not contracts of insurance." Brotherton Constr. Co. v. Patterson-Emerson-Comstock, Inc., 178 A.2d 696, 697 (Pa.1962). One difference between the insurance situation and indemnity contracts in general is that insurance contracts are normally contracts of adhesion. In Brakeman, the court rejected an argument grounded on "freedom of contract" with the response that "the view that insurance policies are private contracts in the traditional sense[ ] is no longer persuasive." Brakeman, 371 A.2d at 196. The court added, "An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured." Id. Here, unlike in Brakeman, two sophisticated corporations negotiated the contract. (In fact, the only evidence in the record indicates that Ground Services, Inc., Sunset's predecessor, drafted the contract.)
 
 
 10
 We recognize that the Third Circuit, applying Pennsylvania law, has held that the Brakeman rule does apply in insurance cases involving large, sophisticated insureds who may be able to negotiate with an insurer. Trustees of Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 897 (3rd Cir.1987).[2] See also Compagnie des Bauxites de Guinea v. Insurance Co. of North America, 794 F.2d 871, 875 (3d Cir.1986) (recognizing the insured "is a large company with the ability to negotiate" with the insurer). The beneficial result of the Trustees decision is that, in an industry where most contracts can be characterized as contracts of adhesion, insurers are not encouraged to litigate whether the insured in a particular case is sufficiently sophisticated that the notice-prejudice rule should not apply. This does not mean, however, that the Brakeman rule should be extended outside the insurance context to a context where negotiated contracts, not contracts of adhesion, are the norm.
 
 
 11
 The Trustees court determined that "Brakeman rested above all on the court's unwillingness to permit a forfeiture of insurance protection 'unless a sound reason exists for doing so.' " Trustees, 815 F.2d at 897 (citation omitted); Compagnie des Bauxites, 794 F.2d at 875. Forfeiture, too, is less of a concern in the indemnity context. Unlike an insured, who forfeits the only benefit envisaged under the policy if notice is deficient, a commercial indemnitee is more likely to lose just one of a number of contemplated benefits. Here, though Sunset arguably forfeited the entire benefit of this one provision of the contract, it still gains from the ongoing business relationship with British Airways made possible by the contract. Sunset suffered at most a partial forfeiture of the expected contract benefits.
 
 
 12
 While Pennsylvania courts one day may choose to extend the Brakeman notice-prejudice requirement to indemnity contracts, we will not effect such a change. The notice-prejudice rule is an exception to Pennsylvania's policy of strict interpretation of contracts. Brakeman, 371 A.2d at 196. Further, Pennsylvania courts strictly construe indemnity contracts against the party seeking indemnification. In Lackie v. Niagara Mach. and Tool Works, 559 F.Supp. 377 (E.D.Pa.1983) (applying Pennsylvania law), the district court held that "indemnification clauses are generally 'not favored by the law' and are subject to a strict construction compelling an interpretation 'against the party seeking their protection.' " Id. at 378 (quoting Dilks v. Flohr Chevrolet, 411 Pa. 425, 435, 192 A.2d 682, 687 (1963)). Accord Ging v. Parker-Hunter, Inc., 544 F.Supp. 49 (W.D.Pa.1982) (applying Pennsylvania law) (citing Brown v. Moore, 247 F.2d 711 (3rd Cir.), cert. denied, 355 U.S. 882 (1957)). We are not persuaded that the Pennsylvania Supreme Court would expand the Brakeman exception beyond the unique arena of insurance law.
 
 
 13
 The district court's grant of summary judgment for British Airways is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sunset also asserts that British Airways had actual notice and that actual notice satisfies the contract condition. Viewed in the light most favorable to Sunset, we assume British Airways did have actual notice and was not prejudiced in the least by Sunset's failure to strictly comply with the contract notice provision. While actual notice is clearly relevant to determine whether British Airways was prejudiced by the lack of formal notice, we do not agree that British Airways' actual notice allows us to ignore the express requirement that Sunset provide notice, if strict compliance with the contract provision is required
 
 
 [2]
 The Third Circuit in Trustees did not address the importance any role the insured actually played in negotiating the policy may have had in view of its holding that sophisticated insureds can also avail themselves of the Brakeman rule. Trustees, 815 F.2d at n. 1